**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| MELODY CARPER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | Case No. |
| *Plaintiff,* | ) ) | COMPLAINT – CLASS ACTION |
| v. | ) ) | JURY DEMAND |
| NISSAN NORTH AMERICA, INC., a Delaware corporation, | ) ) ) | |
| *Defendant.* | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Melody Carper brings this class action suit against Defendant, Nissan North America, Inc. ("Defendant" or "Nissan"), on her own behalf and on behalf of a class of other individuals who purchased Nissan brand vehicles manufactured and/or sold by Defendant, to obtain relief from Defendant for a serious defect in the vehicles' paint. This defect has resulted in unsightly discoloration, delamination, and peeling, and as a result has caused a substantial decline in the resale value of the vehicles. Despite knowledge of this defect and previous litigation regarding this issue in the past, Defendant has failed to disclose the existence of the defect to purchasers of its vehicles and has also refused to provide repairs that it otherwise promises under its new vehicle warranty. For her class action complaint, Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because (1) at least one member of the putative class is a citizen of a state different from the Defendant, (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (3) none of the exceptions under that subsection apply to the instant action.

2.      This Court has personal jurisdiction over Defendant because Defendant has ongoing and systematic contacts with the state of Tennessee and conducts business in this District.

3.      Venue is proper in the Middle District of Tennessee because Defendant is headquartered in this District, transacts business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred within this District, as decisions and actions relating to this lawsuit, and which impacted Plaintiff and the putative class were made or taken throughout the State of Tennessee and in this District.

## PARTIES

4.      Plaintiff Melody Carper is a natural person and a citizen of the state of Colorado.

5.      Defendant, Nissan North America, Inc., is a Delaware corporation with its principal place of business in Franklin, Tennessee. Defendant designs, manufactures, markets, distributes, supplies, services, repairs, sells, and leases passenger vehicles throughout the country and in this District.

## FACTUAL ALLEGATIONS

6.      Defendant is one of the most popular manufacturers of passenger vehicles in the United States under both its standard Nissan brand and luxury Infiniti brand. Defendant sells tens of thousands of vehicles each month in the United States and brands themselves as having an

"unprecedented commitment to professionalism and customer service" in their product literature, as well as branding their vehicles as being "ready for adventure."

7.     The purchaser of an automobile has a reasonable expectation that, absent some sort of collision or extreme "Act of God" event, the paint on his or her vehicle will generally last throughout the vehicle's lifetime.

8.     However, Defendant has manufactured, marketed, distributed, supplied, and sold vehicles with defective paint and/or paint application, resulting in the paint fading and peeling, or delaminating, which creates an unacceptable appearance. Not only does the vehicle become unsightly, the defective paint/paint application also exposes the body of the vehicle and increases its susceptibility to corrosion and rust wherever the paint is used on metal body panels.

9.     Upon information and belief, the fading and peeling of the paint is a result of a latent manufacturing defect that existed at the time of the application of the paint, which occurred as part of the manufacturing process. The nature of the defect is such that, absent disclosure from Defendant, a consumer would not be aware of it at the time of purchase or likely until the paint subsequently starts fading and peeling.

10.    In August 2023, Plaintiff visited Larry H. Miller Nissan 104th, an authorized Nissan dealership in Denver, Colorado, and based on Nissan's reputation as a quality car manufacturer, Plaintiff purchased a new 2023 Nissan Rogue with pearl white tricoat paint that came with a bumper to bumper 36,000 mile/3 year warranty.

11.    In or about late October 2023, less than three months after she had purchased the vehicle, and still within the initial new vehicle warranty period, Plaintiff began to notice that the paint on the front bumper of her vehicle had begun to peel and fade to a grayish appearance from the originally purchased pearl white color, and portions of it were stripped of paint altogether.





     12.    Plaintiff contacted the Nissan dealer where she had purchased the vehicle and requested that the paint be repaired. The dealer, however, denied responsibility, denied that there was any warranty coverage for the defective paint, and was unwilling to offer any relief to Plaintiff.

13.     Plaintiff then contacted Defendant's Nissan North America corporate customer service department to seek relief, but Plaintiff was advised that there was nothing Defendant would do to fix the issue.

14.     Plaintiff then received two estimates from autobody shops for repairs. The first, from Kaizen Collision Center in Northglenn, Colorado, stated that the issue "appears to be a failed paint job," and quoted Plaintiff $1,807.29 for repairs. The second, from Caliber Collision in Denver, Colorado, described the issue as "paint peeling, appears to be prepped incorrectly" and quoted Plaintiff $2,465.61 for repairs.

15.     At the time that Plaintiff complained to the dealership and to Defendant about the paint defect, and, indeed, at the time Plaintiff purchased her vehicle, both Defendant and its dealers had knowledge of the defect. Nonetheless, Defendant failed to disclose the existence of the defect to Plaintiff, or otherwise acknowledge their awareness of the problem.

16.     Defendant has received countless complaints from consumers over the past several years about paint defects in its vehicles, including for years prior to Plaintiff purchasing her vehicle and *specifically* as to vehicles painted with its pearl white paint. Indeed, in 2019 Defendant settled a class action alleging they had "manufactured, marketed, distributed, supplied, and sold automotive vehicles with defective exterior paint application, such that, after a period of time the paint peels off in whole parts" for its luxury Infiniti QX56 vehicles and, critically, the same exact Rogue model that Plaintiff purchased. However, as is clearly apparent, Defendant has failed to fix the underlying defect that continues to affect its vehicles and consumers.

17.     Despite Defendant and its dealerships having knowledge as to the latent paint defect in its vehicles and knowledge that the vehicle Plaintiff intended to purchase was likely to experience the same paint defect, Defendant sold the vehicle to Plaintiff without any disclosure

from Defendant or its dealership regarding this paint defect. Defendant later failed to accept any responsibility and/or provide any meaningful relief to Plaintiff and other consumers who complained, despite Defendant having actual knowledge of the paint defect.

18.     Nissan North America's 2023 New Vehicle Limited Warranty states that it covers "any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle[.]"[1] Moreover, Defendant's Warranty further states that, "Corrosion other than perforation such as cosmetic or surface corrosion due to defects in materials or workmanship . . . is covered under the Basic Coverage of the New Vehicle Limited Warranty."[2]

19.     Despite these express promises to repair the very defects that Plaintiff experienced on her vehicle, Defendant has refused to repair the damage and acknowledge the defect in its vehicles, including Plaintiff's vehicle, and Defendant has denied all responsibility for the resulting damage caused to Plaintiff's vehicle.

20.     At the time Plaintiff purchased the vehicle, its fair market value was far less than the amount paid by the Plaintiff because of the latent defect. Furthermore, the paint fading, peeling and delamination on Plaintiff's vehicle has resulted in a diminution in value. The diminution in value, and the money needed to remedy the problem, is greater than simply the cost of a new paint job because the defect increases the risk that the paint peeling will affect the body sheet metal as well and result in irreversible rust and corrosion.

21.     The severity of the defect is made particularly apparent by the extremely low milage on Plaintiff's vehicle when she began to experience paint problems—less than three months after

---

[1] *See* 2023 Warranty Information Booklet, available at www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/shared/2023/2023-nissan-warranty-booklet.pdf, at 6.
[2] *Id.* at 8.

Plaintiff purchased the vehicle and only approximately five months after the vehicle was manufactured.

22.     A basis of the bargain for Plaintiff's purchase was that the paint on Plaintiff's vehicle would last for the lifetime of the vehicle. Plaintiff would not have purchased the vehicle, or would have paid significantly less for it, had she known that its paint would fade, delaminate and/or begin peeling less than one year after purchase.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff seeks to represent the following class and subclasses:

> The Class: All persons in the United States who purchased a Nissan vehicle within the applicable limitations period that had defective paint as shown by Nissan's records.

> The Express Warranty Subclass: All persons in the United States who purchased a Nissan vehicle within the applicable limitations period that exhibited defective paint during the New Vehicle Limited Warranty period.

> The Colorado Subclass: All persons who purchased a Nissan vehicle within the applicable limitations period within the state of Colorado that had defective paint as shown by Nissan's records.

24.     Plaintiff's claims are typical of those of the other Class members. If each Class member were to bring his or her claims in a separate, individual action, such individual claims would require proof of many of the same facts, would seek the same relief, and would rely upon the same theories of recovery.

25.     Plaintiff will fairly and adequately represent the interests of the other members of the Class. Plaintiff's counsel has substantial experience prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to zealously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

26.     Absent this suit proceeding as a class action, most members of the Class would find the cost of litigating their individual claims to be prohibitively expensive and would not be able to obtain any effective remedy for their damages. Treating common questions of law and fact on a classwide basis is superior to multiple individual actions because doing so would conserve the courts' resources, as well as the resources of the parties, and would promote consistency and efficiency of adjudication.

27.     Defendant has acted and failed to act on grounds applicable to both Plaintiff and the other members of the Class, necessitating the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

28.     The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, causing injury to Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages due to the unlawful and wrongful conduct of Defendant.

29.     Nissan brand vehicles are some of the most popular vehicles sold in America. Defendant sells tens of thousands of vehicles every month, and upon information and belief, there are hundreds of thousands of members of the Class, such that joinder of all members is impracticable.

30.     There are many questions of law and fact common to the claims of the Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Was there a latent paint defect in the vehicles manufactured, distributed, supplied, marketed, and/or sold by Defendant?

(b) Did Defendant warrant or otherwise represent that its vehicles would be free from the paint defect experienced by the Class members?

(c) Did Defendant knowingly fail to disclose to the Class members the existence and cause of the paint defect?

(d) Did Defendant continue to manufacture, market, distribute, supply, and sell vehicles with the alleged paint defect even after becoming aware of such defect?

(e) Did the fading and peeling of the paint on the vehicles constitute a breach of warranty made by Defendant to Plaintiff and the other Class members?

(f) Did Defendant fail to provide an adequate remedy to the Class for the defective paint?

(g) Are Plaintiff and the other Class members entitled to damages as a result of Defendant's conduct, and if so, what amount of damages are they entitled to?

## COUNT I Violation of 15 U.S.C. § 2301, *et seq.* (the Magnuson-Moss Warranty Act)
### (on behalf of Plaintiff and the Class and Subclasses)

31.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

32.     Plaintiff and the other Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

33.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)-(5).

34.     The defective vehicles are "consumer products" within the meaning of 15 U.S.C. §
2301(1).

35.     A consumer damaged by a warrantor's noncompliance with an implied warranty
has a cause of action pursuant to 15 U.S.C. § 2310(d)(1).

36.     Each vehicle purchased by the Class members came, as a matter of law, with an
implied warranty of merchantability such that each vehicle was warranted to be of merchantable
quality such that it would pass without objection in the trade and would be fit for the ordinary
purposes for which it is to be used.

37.     Plaintiff and the other Class members each contracted with Defendant, through its
dealer-agents, to purchase Defendant's vehicles, and the purchase price paid by Plaintiff and the
Class members constituted substantial consideration for the vehicles.

38.     Defendant breached the implied warranty of merchantability because the vehicles
purchased by Plaintiff and the other Class members were not fit for the ordinary purposes for which
they were to be used. The vehicles purchased by Plaintiff and the Class members contained a latent
paint defect that existed at the time the vehicles left the hands of Defendant, and the vehicles would
not pass inspection as conforming goods within the trade because at the time of sale they had
defective paint that would fade in color, peel, and delaminate during the lifetime of the vehicle.

39.     Defendant knew of the defect at the time of sale, and Defendant's cars were unfit
for driving and became effectively no longer the cars that the consumers purchased given the
substantial and material alterations to the vehicles' appearance.

40.     Defendant's breach of warranty deprived Plaintiff and the Class members the
benefit of their bargain with Defendant, as the quality, durability and appearance of the vehicles'

paint, along with the vehicles' ability to withstand rust and corrosion, were material to their purchasing decisions.

41.     Plaintiff specifically informed Defendant about its breach of the implied warranty prior to the filing of this action, and Defendant had a reasonable amount of time to cure its breach. Defendant failed to effectively remedy the breach as to Plaintiff and, despite being aware of the defective paint and being informed of the defect by numerous other Class members, Defendant has failed to provide any reasonable remedy. Under these circumstances, any requirement for other Class members to provide Defendant any further reasonable opportunity to cure its breach of the implied warranty should be deemed satisfied and fully excused.

42.     As a proximate and foreseeable result of Defendant's breach of warranty, Plaintiff and the Class members have and/or will sustain damages and loss. These damages include, inter alia: the decrease in resale value of their vehicles resulting from the paint defect, including color fading, peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Class members having been denied the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Class members have incurred and/or will incur in order to effectively remedy their vehicles' paint-related problems.

43.     The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

44.     Given the latent nature of the paint defect and Defendant's concealment of the defect, any limitations period that would otherwise bar the claims of Plaintiff or the other Class members should be tolled. Additionally, Plaintiff and the Class members continue to suffer a

violation of their legally protected interests each day that Defendant fails to remedy the defect and make them whole.

**COUNT II: Breach of Implied Warranty of Merchantability**
**(on behalf of Plaintiff and the Class and Subclasses)**

45.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

46.     Plaintiff and the other Class members each contracted with Defendant, through its dealer-agents, to purchase Defendant's vehicles, and the purchase price paid by Plaintiff and the Class members constituted substantial consideration for the vehicles.

47.     The vehicles purchased by Plaintiff and the Class members contained a latent paint defect that existed at the time the vehicles left the hands of Defendant.

48.     Defendant breached the implied warranty of merchantability that was provided by Defendant to each vehicle owner, as the vehicles purchased by Plaintiff and the other Class members were not fit for the ordinary purposes for which they were to be used. The purchased vehicles would not pass inspection as conforming goods within the trade because at the time of sale they had defective paint that has and/or will fade in color, peel, and delaminate during the lifetime of the vehicle.

49.     The paint defect in Defendant's vehicles is the direct and proximate cause of the damages and losses incurred, and/or to be incurred, by Plaintiff and the other Class members in an amount to be determined at trial. These damages include, inter alia: the diminution in value of the vehicles resulting from the paint defect, including color fading, peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Class members being denied the benefit of the bargain they agreed to with Defendant; and any further monetary

or other damages that Plaintiff and the Class members have incurred and/or will incur in order to effectively remedy their vehicles' paint-related problems.

50.     Given the latent nature of the paint defect and Defendant's concealment of the defect, any limitations period that would otherwise bar the claims of Plaintiff or the other Class members should be tolled. Additionally, Plaintiff and the Class members continue to suffer a violation of their legally protected interests each day that Defendant fails to remedy the defect and make them whole.

**COUNT III Violation of 15 U.S.C. § 2301, _et seq._ (the Magnuson-Moss Warranty Act)**
**(on behalf of Plaintiff and the Express Warranty Subclass)**

51.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

52.     Plaintiff and the other Express Warranty Subclass members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

53.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)-(5).

54.     The defective vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

55.     A consumer damaged by a warrantor's noncompliance with a written warranty has a cause of action pursuant to 15 U.S.C. § 2310(d)(1).

56.     Each vehicle purchased by the Express Warranty Subclass members came with a written new vehicle warranty provided by Defendant that warrantied that Defendant would repair any defects in materials or workmanship in the vehicles during the initial 3 years/36,000 miles after the in-service date.

57.     Plaintiff and the other Express Warranty Subclass members each contracted with Defendant, through its dealer-agents, to purchase Defendant's vehicles, and the purchase price paid by Plaintiff and the Express Warranty Subclass members constituted substantial consideration for the vehicles.

58.     Defendant breached its express warranty by refusing to repair the defective paint on the vehicles purchased by Plaintiff and the other Express Warranty Subclass members.

59.     Defendant's breach of warranty deprived Plaintiff and the Express Warranty Subclass members the benefit of their bargain with Defendant, as the quality, durability and appearance of the vehicles' paint, along with the vehicles' ability to withstand rust and corrosion, were material to their purchasing decisions, as were Defendant's representations about the scope and coverage of its new vehicle warranty.

60.     As a proximate and foreseeable result of Defendant's breach of its express warranty, Plaintiff and the Express Warranty Subclass have and/or will sustain damages and loss. These damages include, inter alia: the diminution in value of their vehicles resulting from the paint defect, including color fading, peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Express Warranty Subclass members having been denied the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Express Warranty Subclass have incurred and/or will incur in order to effectively remedy their vehicles' paint-related problems.

61.     The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

## COUNT IV Violation of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Express Warranty Subclass)

62.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

63.     Each vehicle purchased by the Express Warranty Subclass members came with a written new vehicle warranty provided by Defendant that warrantied that Defendant would repair any defects in materials or workmanship in the vehicles during the initial 3 years/36,000 miles after the in-service date.

64.     Plaintiff and the other Express Warranty Subclass members each contracted with Defendant, through its dealer-agents, to purchase Defendant's vehicles, and the purchase price paid by Plaintiff and the Express Warranty Subclass members constituted substantial consideration for the vehicles.

65.     Defendant breached its express warranty by refusing to repair the defective paint on the vehicles purchased by Plaintiff and the other Express Warranty Subclass members.

66.     Defendant's breach of warranty deprived Plaintiff and the Express Warranty Subclass members the benefit of their bargain with Defendant, as the quality, durability and appearance of the vehicles' paint, along with the vehicles' ability to withstand rust and corrosion, were material to their purchasing decisions, as were Defendant's representations about the scope and coverage of its new vehicle warranty.

67.     As a proximate and foreseeable result of Defendant's breach of its express warranty, Plaintiff and the Express Warranty Subclass have and/or will sustain damages and loss. These damages include, inter alia: the diminution in value of their vehicles resulting from the paint defect, including color fading, peeling/delamination, and increased rust and corrosion; expectation damages as a result of Plaintiff and the Express Warranty Subclass members having been denied

the benefit of the bargain they agreed to with Defendant; and any further monetary or other damages that Plaintiff and the Express Warranty Subclass have incurred and/or will incur in order to effectively remedy their vehicles' paint-related problems.

68.    The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value, and the total sum or value of all claims to be determined in this class action meets or exceeds $50,000 (not including interest and costs).

## <u>COUNT V: Negligence</u>
**(on behalf of Plaintiff and the Colorado Subclass)**

69.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

70.    Defendant owed Plaintiff and the other Colorado Subclass members a duty to design and manufacture its vehicles in such a way as to ensure that they would not contain defects that would cause damage to their vehicles, such as the paint defects discussed herein.

71.    Defendant and/or its agents negligently designed, manufactured, tested, and/or applied the defective paint on its vehicles.

72.    The negligent design, manufacturing, testing and/or application of the paint caused the color to material fade and the paint to materially peel on Plaintiff's and the other Colorado Subclass members' vehicles.

73.    As a direct and proximate result of Defendant's negligence, Plaintiff and the other Colorado Subclass members have sustained and/or will sustain damages.

## COUNT VI: Fraudulent Concealment
## (on behalf of Plaintiff and the Class and Subclasses)

74.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75.     As evidenced by other litigation involving a similar paint defect at issue here and involving the same vehicle as the one purchased by Plaintiff going back to 2017, Defendant has at all times been well aware that its vehicles are produced with defective paint that chips, peels, delaminates, and leaves the underlying body panels exposed and prone to corrosion and rust.

76.     Nonetheless, Defendant did not remedy the issues that have continued to cause the defective paint on its vehicles and has intentionally misrepresented, concealed and/or omitted material facts from Plaintiff and the Class members about the defect in the paint on its vehicles.

77.     Defendant intended to induce Plaintiff and the Class members to purchase its vehicles and to purchase them at a higher price than Plaintiff and the Class members would have paid had the defect been disclosed, and Defendant continues to misrepresent, conceal and/or omit material facts in an effort to avoid being responsible for remedying the paint defects. When confronted by consumers with complaints regarding the premature failure of the paint, Defendant developed and implemented a concerted plan to respond with denial, refusing to appropriately fix any of the vehicles, including even those still covered by the new vehicle warranty.

78.     Due to Defendant's superior knowledge of the paint defects – given that it designed, manufactured, tested, and applied the paint to the vehicles; manufactured, distributed and/or supplied the vehicles to consumers; and has been aware of a significant number of consumer complaints about the defect for over 6 years – it had a duty to disclose to Plaintiff and the Class members information regarding the paint defects, and its failure or refusal to disclose the paint defects constituted affirmative misrepresentations and/or intentional omissions by Defendant.

79.     Plaintiff and the Class members were unaware that Defendant's vehicles suffered from the paint defect when they purchased their vehicles, and they relied on statements by Defendant and its dealer-agents that included these material misrepresentations and/or omissions when they purchased these defective vehicles. Plaintiff and the members of the Class relied on the omitted facts to their detriment and would not have acted as they did had they known the omitted facts relating to the paint.

80.     Defendant's material misrepresentations and omissions regarding the paint used on its vehicles concerned information that reasonable consumers would deem important when deciding whether to purchase a vehicle.

81.     As a direct and proximate result of Defendant's wrongful conduct and practices, Plaintiff and the other Class members have suffered and/or will suffer damages.

82.     Defendant's wrongful acts alleged herein were intentional and malicious and were taken with the intent to mislead and defraud, especially when considered in light of Defendant's prior conduct and explicit acknowledgment of the issue through prior litigation. As such, Plaintiff and the Class members are entitled to punitive and exemplary damages.

## COUNT VII: Unjust Enrichment
### (on behalf of Plaintiff and the Class and Subclasses)

83.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

84.     Plaintiff brings this unjust enrichment claim to the extent the Court finds that there was no contractual relationship between Plaintiff and/or the Class members, on the one hand, and Defendant, on the other hand.

85.     Defendant knew of the paint defect in its vehicles at the time the vehicles were distributed to its dealerships and at the time the vehicles were sold to Plaintiff and the other Class members.

86.     Despite having knowledge of the defective paint on its vehicles, Defendant failed to disclose the existence of the defect to Plaintiff and the other Class members at or prior to the time of the sale of the vehicles and has failed to conduct any product recall or otherwise notify purchasers or potential purchasers of the defect.

87.     As a result of its failure or refusal to disclose the existence of the paint defect, as set forth above, Defendant was able to, and did, charge a higher price for its vehicles than what the vehicles' true value should have been, such that Defendant obtained monies that rightfully belong to Plaintiff and the other Class members. Defendant has received a measurable benefit as a result of its wrongful practices.

88.     Defendant accepted and retained non-gratuitous benefits conferred by Plaintiff and the other Class members, who, without knowledge of the defect, paid a higher price for their vehicles than their fair market value had the defect been known. Plaintiff and other Class members did not confer these benefits officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

89.     Plaintiff and other Class members are therefore entitled to restitution in an amount to be determined at trial.

**COUNT VIII: Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101 *et seq.***
**(on behalf of Plaintiff and the Colorado Subclass)**

90.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

91. The Colorado Consumer Protection Act ("Colorado CPA") prohibits deceptive practices in the course of a person's business, including but not limited to "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

92. Defendant is a "person" under Colo. Rev. Stat. § 6-1-102(6).

93. Plaintiff and the other Colorado Subclass members are "consumers" for purposes of Colo. Rev. Stat § 6-1-113(1)(a).

94. Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

95. In course of Defendant's business in manufacturing, marketing, distributing, and selling the vehicles purchased by Plaintiff and the other members of the Colorado Subclass, Defendant failed to disclose and actively concealed the existence of the paint defect in its vehicles.

96. Furthermore, Defendant misrepresented that it would repair defective paint under its new vehicle warranty when in fact it denied any such repairs.

97. In purchasing Defendant's vehicles, Plaintiff and the other Colorado Subclass members were deceived by Defendant's failure to disclose that its vehicles had defective paint and that it would not repair any such defects under the applicable warranties.

98. Plaintiff and the other Colorado Subclass members reasonably relied upon Defendant's omissions and misrepresentations and had no way of knowing about the paint defect in their vehicles or that Defendant would not honor its warranty until after they had already purchased them.

99.     Accordingly, Defendant engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Defendant's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

100.     Defendant's conduct proximately caused injuries to Plaintiff and the other Colorado Subclass members. Plaintiff and the other Colorado Subclass members are reasonable consumers who do not expect that the paint on their vehicles would fail during the lifetime of the vehicle. This is a reasonable and objective consumer expectation relating to vehicle paint.

101.     Plaintiff and the other Colorado Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that they overpaid for their vehicles and did not receive the benefit of their bargain and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

102.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest

103.     Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each Colorado Subclass member.

104.     Plaintiff also seeks punitive damages because Defendant engaged in aggravated and outrageous conduct given the length of time that it has continually omitted information about its defective vehicle paint and continuous failure to remedy the issue.

105.     Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendant for the following relief:

1.     An order certifying the Class and Subclasses as defined above;

2.     A declaration that Defendant breached its implied and express warranties, both through Magnuson-Moss and through common law, to Plaintiff and the Class members;

3.     Notification to all Class members about the inaccurate and deceptive description of the defective vehicles and the defective paint attributed to them;

4.     An award to Plaintiff and the Class of actual, compensatory, and punitive damages, as proven at trial;

5.     An order awarding Plaintiff and the Class members restitution, disgorgement, or such other equitable relief as the Court deems proper;

6.     An award to Plaintiff and the Class of reasonable attorneys' fees, costs, and pre- and post-judgment interest;

7.     An injunction barring Defendant from continuing to distribute, supply, market, and sell its defective vehicles as fit for their ordinary purposes until Defendant has remedied the defects complained of; and

8.     An award to Plaintiff and the Class of such other and further relief as may be determined to be just, equitable and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable in this action.


Dated: December 8, 2023

Respectfully submitted,

MELODY CARPER, individually and on behalf of a class of similarly situated individuals.

By:    /s/ *Edwin E. Wallis III*
Edwin E. Wallis III (TN #23950)
**GLASSMAN, WYATT, TUTTLE & COX, P.C**.
26 North Second Street
Memphis, Tennessee 38103
Tel: 901.527.4673
Email: ewallis@gwtclaw.com
*Attorney for Plaintiff and the putative Class members*

23