IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MELODY CARPER, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| | ) | NO. 3:23-CV-01293 |
| Plaintiff, | ) | |
| | ) | JUDGE RICHARDSON |
| v. | ) | |
| | ) | |
| NISSAN NORTH AMERICA, INC., a Delaware company, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is the motion to dismiss (Doc. No. 22, "Motion") filed by Defendant Nissan North America, Inc. Via the Motion, Nissan requests that this Court dismiss all claims in Plaintiff's complaint (Doc. No. 1, "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant filed a memorandum in support of the Motion (Doc. No. 23, "Memorandum"), and Plaintiff filed a response to the Motion. (Doc. No. 32, "Response"). Defendant filed a reply to Plaintiff's Response. (Doc. No. 37, "Reply").

For the reasons set forth herein, the Motion is GRANTED.

BACKGROUND[1]

This case was brought by the named Plaintiff, Melody Carper (hereinafter, "Plaintiff"), on behalf of herself and a putative class. Plaintiff's claims are based on her allegations that Nissan North America, Inc. (hereinafter, "Nissan") manufactured, marketed, and sold vehicles— specifically, Nissan Rogue sports utility vehicles—with defective paint that prematurely peels, fades, and delaminates. (Doc. No. 1 ¶ 8). According to the Complaint, Plaintiff purchased her 2023 Nissan Rogue with pearl-white tricoat paint in August 2023 from Larry H. Miller Nissan 104th, an authorized Nissan dealership in Denver, Colorado. (*Id.* ¶ 10). The vehicle was sold with a "bumper to bumper" 3-year/36,000-mile limited warranty covering defects in materials and workmanship. (*Id.* ¶¶ 10, 18).

Approximately two to three months after purchase, Plaintiff observed what she describes as peeling and discoloration on the front bumper of the vehicle. She alleges that the paint faded from pearl white to gray and that portions of the bumper became stripped of paint entirely. (*Id.* ¶¶ 11–13).

Following her discovery of the issue, Plaintiff contacted the selling dealership and requested repair under warranty. The dealership, however, denied coverage on the grounds that the defect was cosmetic and not covered by warranty terms. Plaintiff then escalated the complaint to Nissan's corporate customer-service department. She claims that Nissan also declined to offer a remedy, because (according to Nissan) it was not responsible for addressing the paint condition.

---

[1] The facts herein are taken from the Complaint. (Doc. No. 1). For purposes of the instant Motion, the facts in the Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party *claims* to be true. Throughout this order, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

(*Id.* ¶¶ 12–13). Further, the paint defect is not limited to her vehicle, but instead reflects a broader systemic defect in the paint formulation or application process affecting a class of Nissan vehicle owners. Prior to Plaintiff's vehicle purchase, Nissan was aware of the defect based on its internal testing, consumer complaints, and prior litigation involving similar issues. (*Id.* ¶¶ 1, 14–15, 75–78). In particular, Plaintiff references a class action concerning paint delamination on Infiniti vehicles[2] and asserts that Nissan failed to disclose the known risk to consumers purchasing newer model Rogues, including the 2023 model. (*Id.* ¶¶ 75–76). The defect materially diminishes the resale value of Plaintiff's vehicle and potentially exposes metal body panels to corrosion and rust. Although the affected bumper in her case is plastic and therefore not subject to rust, the defect indicated a risk that other, more critical metal panels will eventually exhibit similar failure. Further, the cost of repainting or refinishing the vehicle is substantial and not reasonably borne by consumers who purchase new vehicles under the expectation of long-lasting paint durability. (*Id.* ¶¶ 20, 42–43).

Based on these allegations, Plaintiff brings eight causes of action: breach of implied warranty of merchantability (Count II); violation of the Magnuson–Moss Warranty Act (Counts I, III, IV); negligence (Count V); fraudulent concealment (Count VI); unjust enrichment (Count VII); and violation of the Colorado Consumer Protection Act (Count VIII). Plaintiff seeks to represent both a nationwide class and a Colorado subclass of persons who (during the applicable limitation period) purchased a Nissan vehicle "that had defective paint as shown by Nissan's records." (*Id.* ¶ 23).

---

[2] Plaintiff cites prior litigation involving paint delamination on Nissan vehicles—including Rogue model vehicles—to support her allegation that Nissan had pre-sale knowledge of a recurring paint defect affecting multiple vehicle lines. She contends this past litigation demonstrates that Nissan was aware of the defect but failed to disclose it to subsequent purchasers, including those buying 2023 Rogues. (Doc. No. 1 ¶ 16, Doc. No. 22 ¶ 75).

Nissan has moved to dismiss all claims pursuant to Rule 12(b)(6), arguing generally that Plaintiff has failed to allege any actionable defect that affects vehicle safety, utility, or merchantability.[3] In addition, Nissan contends that certain of Plaintiff's claims—namely, her fraud-based claims—fail to satisfy the heightened pleading requirements of Rule 9(b), and that claims premised on an alleged duty to disclose are deficient for failure to plausibly allege pre-sale knowledge of a defect in the 2023 Rogue. The parties dispute the significance of prior litigation, whether the paint condition is a mere cosmetic characteristic, and whether Plaintiff's vehicle (assuming that it has the paint defects that Plaintiff alleges it has) is fit for ordinary use. The Court addresses these arguments below.

LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above and does below. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, and mere recitations of the elements of a cause of action

---

[3] On the same day that it filed the Motion, Nissan also filed a "Motion to Compel Arbitration and Stay Proceedings" (Doc. No. 24), asserting that Plaintiff is contractually obligated to arbitrate the claims presented in the Complaint. Because the Court grants Nissan's motion to dismiss, it will not reach the motion to compel arbitration, and the case will be closed without addressing that motion.

are insufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

ANALYSIS

The Court now addresses each of Plaintiff's claims in turn. Although the allegations reflect Plaintiff's dissatisfaction with the vehicle she purchased, the claims all fail to survive scrutiny under the applicable rules of pleading and substantive law. Therefore, the Motion will be granted in full.

A. Breach of Implied Warranty of Merchantability (Count II)

Plaintiff's claim that her 2023 Nissan Rogue is unmerchantable centers on a localized area of fading and peeling paint on the vehicle's front bumper. Her theory is that such a defect renders her vehicle unfit for its ordinary purpose. Nissan responds that Plaintiff fails to plausibly allege unmerchantability, because the defect is cosmetic and isolated, and has no bearing on the vehicle's ability to function as a vehicle.

Because both parties appear to assume that Colorado law governs Plaintiff's state-law claims, and because the transaction at issue occurred in Colorado and one of Plaintiff's claims arises under a Colorado statute, the Court applies Colorado law to all of Plaintiff's state-law claims. The Court agrees with Nissan that under Colorado law, the implied warranty of merchantability guarantees that goods are "fit for the ordinary purposes for which such goods are used." Colo. Rev. Stat. § 4-2-314(2)(c). The ordinary purpose of an automobile is to provide safe and reliable transportation. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989). It is well established that a vehicle may still be considered merchantable even if it requires some repairs or exhibits flaws unrelated to safety, provided that it remains operable (i.e., capable of being driven) in a safe condition substantially free of defects. *See O'Connor v. BMW of N. Am., LLC*, No. 18-CV-03190-CMA-STV, 2020 WL 1303285, at *5 (D. Colo. Mar. 19, 2020). The Court finds that Plaintiff has not alleged facts plausibly suggesting that the paint issues of which she complains

makes her vehicle inoperable, unsafe to operate, or not substantially (as opposed to completely) free of defects.

Plaintiff attempts to salvage her claim by invoking *Stanley v. Nissan N. Am., Inc.*, 719 F. Supp. 3d 786 (M.D. Tenn. 2024), which involved a malfunctioning fuel pump. That case, however, was not decided under Colorado law, which diminishes its persuasive value here. Moreover, that case is readily distinguishable. In *Stanley*, the buyers alleged that design flaws in Nissan's fuel injection pumps in their pick-up trucks resulted in the release of metal shavings that accumulated within fuel systems and damaged them, ultimately leading to "catastrophic failure," such that the "vehicles were defective at the time of purchase and could unexpectedly stall at any time due to a fuel pump failure." *Stanley*, 719 F. Supp. 3d at 797-98, 809. The defect directly affected the drivability and safety of the vehicle—raising an objectively serious concern. No such functional impairment is alleged here. Nor does Plaintiff plausibly allege that the condition of her bumper portends a broader systemic failure of painted surfaces. The conclusory suggestion that metal components could eventually rust is speculative and unsupported by any factual matter in the Complaint. Equally speculative (and indeed patently implausible) is the notion that any such rusting would someday render the vehicle inoperable or unsafe to operate.[4] Likewise speculative is the notion that any rusting that might someday occur would be sufficiently severe, and occur sufficiently early, that the vehicle *at the time of sale* plausibly can be viewed as not substantially (as opposed to completely) free of defects.[5]

---

[4] And even if it did, for reasons reflected in the following footnote, any rusting that *eventually* would render the vehicle inoperable or unsafe to operate does not necessarily mean that the vehicle was unmerchantable *at the time of sale*, which is what Plaintiff must show.

[5] The question is whether the vehicle was merchantable *at the time of sale. See, e.g., Cissell Mfg. Co. v. Park*, 36 P.3d 85, 90 (Colo. App. 2001) (quoting § 4–2–314, C.R.S.2000). This means that any potential *future* rusting must be grounds for saying that the vehicle was not merchantable at the time of sale. So the question is not whether a risk of future defects, *if eventually realized*, would make the vehicle

Because Plaintiff's allegations describe a defect that is cosmetic, localized, and without operational consequence, the Court finds that she has failed to state a plausible claim for breach of the implied warranty of merchantability. Therefore, Count II is DISMISSED.

B. Magnuson–Moss Warranty Act ("MMWA") (Counts I, III, IV)

The Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–2312, is a federal statute that governs written and implied warranties for consumer products. Among other things, it allows consumers to bring suit in federal court for breach of warranty—but only where there is a valid underlying state-law warranty claim.[6] *See Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). Because Plaintiff's state-law implied warranty claims fail for the reasons discussed above, her MMWA claims premised on the same theories necessarily fail as well. *See also Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013).

Moreover, Plaintiff does not assert any other kind of warranty claim—such as a claim for breach of express warranty under state law—that could independently support a viable MMWA cause of action.

Even if that were not so, the MMWA claims still falter on other grounds. As Nissan correctly points out, Plaintiff failed to exhaust mandatory informal dispute resolution procedure set forth in the written warranty. The MMWA permits a warrantor to condition relief on a

---

unmerchantable once realized. Instead, the question is whether that *as-yet unrealized* risk is of such a magnitude that it should be deemed to have made the vehicle unmerchantable *at the time of sale*. Therefore, to the extent that a claim or merchantability is based on the idea that the risk of rusting makes the vehicle not substantially free of defects, the mere risk of rusting *someday* must be deemed to mean that the vehicle *at the time of sale* was not substantially free of defects. For a mere risk of unrealized rusting to render a vehicle not substantially free of defects at the time of sale, surely the risk must be (i) relatively high; (ii) a risk of rusting that is relatively severe, considering its degree and expansiveness; and (iii) a risk of rusting that would occur relatively soon (such that, for example a risk of rusting 20 years post-sale—were the vehicle to last that long—is not a valid basis to call the vehicle unmerchantable at the time of sale).

[6] The MMWA, 15 U.S.C. §§ 2301–2312, does not provide an independent federal cause of action; a federal action under the MMWA exists only where it is based on a valid state-law warranty claim. *See Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005).

consumer's participation in a dispute settlement mechanism that complies with 16 C.F.R. § 703 and is incorporated into the warranty. *See* 15 U.S.C. § 2310(a)(3). Nissan's warranty directs consumers to the BBB Auto Line program for pre-suit mediation or arbitration.

Plaintiff states that she contacted Nissan's corporate customer service department (Doc. No. 32 at 3). This is insufficient. As Nissan notes, absent from the Complaint is any indication that Plaintiff undertook steps to contact the BBB Auto Line, as required and outline in the warranty. The statute and implementing regulations contemplate meaningful engagement in the informal process. *See Sheris v. Nissan N. Am., Inc.*, No. 2:07-cv-02516-WHW-CCC, 2008 WL 2354908, at *8 (D.N.J. June 3, 2008) (failure to complete dispute resolution renders MMWA claim premature). Because Plaintiff failed to avail herself of this procedure, her MMWA claims are barred. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 989 (N.D. Cal. 2014) (MMWA claim dismissed (without prejudice) for failure to comply with the informal dispute settlement procedure).

Accordingly, Counts I, III, and IV are DISMISSED without prejudice.

C. <u>Negligence (Count V)</u>

Seeking to recover in tort, Plaintiff asserts (in Count V) a claim for negligence. Colorado's economic loss doctrine bars tort claims that are premised on contractual duties and seek recovery of only economic damages. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). It is axiomatic that when seeking to recover in tort, a plaintiff must assert a duty that arises independent of any contract. Where the source of the alleged duty is the parties' contract, tort remedies are unavailable. Plaintiff's Complaint indicates that the duties she alleges Nissan owed

to her arose from the parties' contractual relationship, including both the express limited warranty and the implied warranty of merchantability.[7]

Seeking a way around this outcome, Plaintiff argues that Nissan owed a general tort (as opposed to contractual) duty to manufacture a vehicle free of latent defects. But this general tort duty does not extend to purely economic expectations governed by contract. *See Shores v. Atlas Roofing Corp.*, No. 14-cv-03074-PAB-MEH, 2016 WL 299016, at *7 (D. Colo. Jan. 25, 2016). In other words, the general tort duty does not encompass a duty to meet a purchaser's expectations that are of a purely economic nature. Plaintiff does not allege any facts suggesting some failure to meet an expectation that was not economic—i.e., a failure that resulted in something other than a purely economic loss. That is, she does not allege either purely personal (physical or emotional) injury or property damage that is not purely economic in nature. Her theory rests on disappointment with the performance of a purchased product and dissatisfaction with warranty coverage for that product—classic hallmarks of a situation where (i) the applicable cause(s) of action would sound in contract rather than tort, and, relatedly, (ii) the economic loss doctrine would bar recovery in tort, even if recovery in tort was not per se deemed categorically out of the question.

Accordingly, Count V is DISMISSED.

### D. Fraudulent Concealment (Count VI)

Fraud-based claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This includes specifying the "who, what, when, where, and how" of the alleged fraudulent conduct. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

---

[7] Although the latter warranty (the implied warranty of merchantability) is imposed by operation of law under the Uniform Commercial Code (rather than by express contract), it is nonetheless contractual in nature, as it arises from the sale of goods rather than from any independent duty in tort.

Plaintiff fails to meet this burden. She does not identify any specific individual at Nissan who allegedly knew of the defect and concealed it. She does not describe the time or place of any fraudulent omission. Nor does she explain how Nissan's general marketing statements—such as references to quality and reliability—were rendered false by knowledge of a paint issue that was limited both in scope—being confined to a non-structural plastic bumper—and in effect, causing only cosmetic damage rather than impairing the vehicle's safety, function, or reliability. Absent such detail, Plaintiff has not satisfied Rule 9(b)'s requirement to plead the circumstances constituting fraud with particularity. Moreover, Plaintiff's pre-sale knowledge allegations do not plausibly support the inference that Nissan had actual knowledge of a paint defect in the 2023 Nissan Rogue. The Court cannot reasonably infer such knowledge based solely on prior litigation involving different vehicles, or on anecdotal consumer complaints that are not specifically tied to the model and year at issue. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146–47 (9th Cir. 2012).

Finally, Plaintiff fails to plausibly suggest that Nissan had a duty to disclose. Under Colorado law, such a duty may arise in limited circumstances—such as where there is a fiduciary relationship, unequal bargaining power, or affirmative steps taken to conceal the truth. *See Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 27 (Colo. App. 2010). A duty to disclose may also arise from an express contractual obligation. However, Plaintiff does not identify any provision of the parties' agreement—whether in the limited warranty or otherwise—that imposed such a duty. And even if a contractual duty to disclose existed, it would not suffice to support a claim for fraudulent concealment under Colorado law absent an independent duty sounding in tort. Because no such independent duty is alleged or supported here, Plaintiff's fraudulent concealment claim must be dismissed.

Count VI is therefore DISMISSED.

E. Unjust Enrichment (Count VII)

Plaintiff's unjust enrichment claim fails as a matter of law. Colorado law generally does not permit equitable recovery where an express contract governs the same subject matter. *See Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) ("In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."). For an unjust enrichment claim to be precluded under this rule, the claim must "cover[ ] conduct within the scope of the predecessors' express contract[ ]." *Id.* at 817. In the Court's view, Plaintiff's unjust enrichment claim does that; it covers (alleges) Nissan's obligation to repair specific defects and workmanship and requests a particular remedy for Nissan's alleged breach of such obligations—and Plaintiff received a written warranty[8] at the time of purchase that expressly defines the scope of Nissan's obligations with respect to defects in materials or workmanship in the vehicle that she purchased.

This rule of preclusion is subject to two limited exceptions: (1) where the express contract is invalid, or (2) where the party asserting unjust enrichment did so due to improper or bad faith conduct by the other party. *Id.* However, neither of these exceptions applies here. Plaintiff does

---

[8] Although it was unable to find Colorado law on point, the Court has no reason to doubt that Colorado law embraces "'the view that [a]n express warranty is entirely a matter of contract, wherein the seller may define or limit his obligation respecting the subject of the sale, and provide as to the manner of fulfilling the warranty or the measure of damages for its breach.'" *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1372 (5th Cir.) (quoting *S.I. Property Owners' Assoc. v. Pabst Corp.,* 714 S.W.2d 358, 361 (Tex. App. 1986)), *decision clarified on reh'g*, 832 F.2d 1378 (5th Cir. 1987). Accord *Porter v. Craddock*, 84 F. Supp. 704, 709 (W.D. Ky. 1949) ("The existence of an express warranty is purely a matter of contract."). The view strikes the Court as very sound and unexceptional. Moreover, the Complaint unsurprisingly alleges that Plaintiff contracted—i.e., entered into a purchase contract— with Nissan ("through its deal-agents"). (Doc. No. 1 ¶¶ 37, 46, 57, 64) and implies unmistakably that the warranty was a part of that contract.

not allege that the warranty is invalid, and her Complaint is not based on allegations of opportunistic or deceptive conduct during litigation of the type contemplated in *Interbank*. Her unjust enrichment claim is therefore barred as a matter of law, as it merely repackages what is, at most, a contract-based warranty dispute into a claim for equitable relief. Indeed, even Plaintiff indicates that this claim should proceed unless "the Court finds that there was no contractual relationship between Plaintiff and/or the Class members, on the one hand, and Defendant, on the other hand," (Doc. No. 1 ¶ 84), and the Court has found to the contrary for present purposes based on the allegations of the Complaint.

Count VII is DISMISSED.

F. Colorado Consumer Protection Act (Count VIII)

Regarding Plaintiff's claim under the Colorado Consumer Protection Act ("CCPA"), the Court first notes that the statute does not permit private class action claims for monetary damages. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *6 (D. Colo. July 1, 2015). So the Court could not certify a class with respect to this claim in any event.

Whether Plaintiff has a valid CCPA claim on her own behalf is a separate question. The Court concludes that the Complaint fails to allege facts plausibly suggesting the existence of a CCPA claim. Those elements are:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003) (quoting *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Regarding the first element, "a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to [adequately allege] a deceptive or unfair trade practice" within the meaning of the CCPA. *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.,* 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011). And to be a "'false representation' within the context of the CCPA[, the representation] must either 'induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers.'" *Id.* at 1120 (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo. 2003)).[9]

Plaintiff does not identify any unfair or false statement of fact, nor does she allege particularized facts suggesting that she relied on such a statement in deciding to purchase the vehicle. Her generalized references to Nissan's reputation and vague representations are insufficient to satisfy the heightened pleading standard of Rule 9(b), which requires fraud allegations to be stated with particularity.

Count VIII is DISMISSED.

---

[9] For some reason, the court in *HealthONE of Denver, Inc.* erroneously referred to *Rhino Linings USA, Inc.*, as a decision of the Tenth Circuit. 805 F. Supp. 2d at 1120.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss (Doc. No. 22). Plaintiff's claims in her Complaint (Doc. No. 1) all are DISMISSED. Defendant's motion to compel arbitration and stay proceedings (Doc. No. 24) is DENIED AS MOOT.

The Clerk is directed to enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE